IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ALONZO HAMPTON                                                                                     PLAINTIFF
ADC #137559

v.                                            4:21-cv-00714-BSM-JJV

CLAUDIA HARRIS,
Deputy Warden, Maximum Security Unit, *et al.*                                          DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

### DISPOSITION

**I.    DISCUSSION**

Alonzo Hampton ("Plaintiff") is a prisoner in the Maximum Security Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants Deputy Warden Claudia Harris, ADC Director Dexter Payne, and Major Jeffery Deen are failing to protect him from being harmed by members of the Aryan Nation.[1]

---

[1] On September 20, 2021, Plaintiff's claims against Defendant Hutchinson were dismissed without prejudice because the Complaint failed to plead a plausible claim against him. (Docs. 5, 6.)

1

(Doc. 2.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to dismissal because Plaintiff failed to properly exhaust his administrative remedies against them. (Docs. 31, 32, 33.)  Plaintiff has filed a pleading entitled "Plaintiff's Exhausted Grievances Concerning a Racist Hate Group Having a Hit on his Life," which I construe to be a Response. (Doc. 34.)  After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be GRANTED, and Plaintiff's remaining claims be DISMISSED without prejudice.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material

will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

### B. The ADC's Exhaustion Procedure

The relevant grievance policy is ADC Administrative Directive 14-16. (Doc. Nos. 31-1, 31-2.) This Directive establishes a three-step procedure. (*Id*.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver

3

within fifteen days of the incident. The form must include a brief statement that is specific as to the substance of the issue or complaint to include the date, place, "personnel involved or witnesses," and how the policy or incident affected the inmate submitting the form. (*Id*. at § IV(E)(2))(emphasis added.) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process" may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties. (*Id*. § IV(C)(4).) And, the grievance form itself reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) The problem solver must respond to the informal resolution within three working days. (*Id*. at § IV(C)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance to the Warden on the same Unit Level Grievance Form within three working days. (*Id.* at § IV(E)(11) and (F)(5)(7)). The Warden must provide a written response to the formal grievance within twenty working days. (*Id*. at § IV(F)(7).)

Third, an inmate who is dissatisfied with the response or does not timely receive a response must appeal to the ADC Assistant Director within five working days. (*Id*. at § IV(F)(8) and (G).) The ADC Assistant Director must provide a written response within thirty working days. (*Id*. at § IV(G)(6).) A decision or rejection of an appeal at this level is the end of the grievance process. (*Id*.) Finally, the Directives include the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at § IV(N).)

### C. Plaintiff's Grievances

The ADC Inmate Grievance Coordinator says in her sworn Declaration that, prior to filing this lawsuit, Plaintiff did not fully exhaust any grievances raising his failure to protect claims against Defendants Payne, Harris, or Deen. (Doc. 31-2.) My review of the record confirms this to be correct.

On November 18, 2021, Plaintiff filed MX-21-1702 alleging Defendants Payne, Harris, Deen, and other ADC officials were failing to protect him from members of the Aryan Nation. (Doc. 34 at 2.) The Warden's office rejected the grievance as improperly raising an "anticipated event." (*Id*. at 3.) On December 14, 2021, the ADC Assistant Director found the grievance did not raise an anticipated event, and then denied Plaintiff's failure to protect claim on the merits. (*Id*. at 4.) Thus, Plaintiff completed the exhaustion process as to MX-21-1702.

However, the timing is wrong. "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies <u>before</u> filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original). Dismissal is mandatory if "exhaustion was not completed at the time of filing." *Id.; see also Booth v. Churner,* 532 U.S. 731, 734 (2001) (the PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not completed at the time of filing). And, Administrative Directive 14-16 § (C)(4) reminds prisoners they "must fully exhaust the grievance prior to filing a lawsuit." (Doc. 31-1 at 4-5.) Here, it is undisputed Plaintiff completed step 3 of MX-21-1702 on December 14, 2021, which was approximately four months <u>after</u> he filed this lawsuit on August 9, 2021.[2] (Doc. 2.) Thus, MX-21-1702 cannot be considered in this action.

---

[2] In fact, Plaintiff did not even begin the first step until November 18, 2021, which was

Plaintiff attached to his Complaint an unnumbered informal resolution saying Defendants Harris, Payne, and other ADC officials (but not Defendant Deen) were failing to protect him from members of the Aryan Nation. (Doc. 2 at 7.) But it appears from that document Plaintiff never submitted it to the problem solver, which is the first step of the grievance process. (*Id*.) In the Complaint, Plaintiff makes the vague allegation that "staff at this prison will not process any of my grievances about this situation, even though my life is in danger." (*Id.* at 3.) Inmates can be excused from the exhaustion requirement is there is evidence prisoner officials prevented them from using the grievance process or administrative remedies were otherwise "unavailable." *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). But, there is no evidence to support Plaintiff's vague assertion, which is contrary to the record demonstrating prison officials responded to MX-21-1702 at all stages of the grievance process. Finally, Administrative Directive 14-16 § IV (E)(11) and (F)(8) specifically say a prisoner may proceed to the next step if he or she does not receive a timely response to an informal resolution or grievance. (Doc. 31-1 at 7-8, 10.) There is no indication Plaintiff did so here. *See Crowley v. Nailor*, No. 19-1293, 783 Fed. Appx. 637 (8th Cir. Nov. 4, 2019) (unpublished decision) (affirming dismissal when a prisoner failed to proceed to the next step of the ADC's exhaustion procedure when he did not receive a timely response to his grievance); *Williams v. Horner*, Case No. 11-3327, 2012 WL 1292887 (8th Cir. April 17, 2012) (unpublished decision) (same).

For these reasons, I conclude Plaintiff failed to properly exhaust his available

---

approximately three months <u>after</u> he filed this lawsuit. (*Id*.)

administrative remedies before filing this lawsuit. Thus, his claims against Defendants Payne, Harris, and Deen should be dismissed without prejudice. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *King v. Iowa Dept. of Corr.,* 598 F.3d 1051, 1052 (8th Cir. 2010) (under the PLRA, § 1983 actions concerning prison conditions shall not be brought by an inmate until such administrative remedies are available are exhausted).

That being said, I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. 31) be GRANTED; Plaintiff's claims against Defendants Harris, Payne, and Deen be DISMISSED without prejudice; and this case be CLOSED.

2.	The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 3rd day of January 2022.

```
                                   _____
                                   JOE J. VOLPE
                                   UNITED STATES MAGISTRATE JUDGE
```